HAMMEL-RIGLANDER PENNANT CORP. *v.* UNITED STATES (No. 3729)[1]

United States Court of Customs and Patent Appeals, May 21, 1934

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Richard E. FitzGibbon* and *Ralph Folks,* special attorneys, of counsel), for the United States.
[Oral argument December 15, 1933, by Mr. Isenschmid and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court holding certain imported watch crowns dutiable under clause

[1] T. D. 47139.

(3) of subparagraph (c) of paragraph 367 of the Tariff Act of 1930, as assessed by the collector at the port of New York, rather than under either clause (4) of subparagraph (c) of that paragraph, or paragraph 397 of that act, as claimed by appellant.

The involved paragraphs, so far as pertinent, read:

PAR. 367. (a) Watch movements, * * * :

\* \* \* \* \* \* \*

(c) Parts for any of the foregoing shall be dutiable as follows:

(1) Parts (except pillar or bottom plates, or their equivalent, bridges or their equivalent, and jewels) imported in the same shipment with complete movements, mechanisms, devices, or instruments, provided for in subparagraph (a) of this paragraph (whether or not suitable for use in such movements, mechanisms, devices, or instruments), 45 per centum ad valorem; but this clause of this subparagraph shall not be applicable to that portion of all the parts in the shipment which exceeds in value 4 per centum of the value of such complete movements, mechanisms, devices, or instruments;

(2) pillar or bottom plates, or their equivalent, shall be subject to one-half the amount of duty which would be borne by the complete movement, mechanism, device, or instrument for which suitable;

(3) each assembly or subassembly (unless dutiable under clause (1) of this subparagraph) consisting of two or more parts or pieces of metal or other material joined or fastened together shall be subject to a duty of 3 cents for each such part or piece of material, except that in the case of jewels the duty shall be 15 cents instead of 3 cents, and except that in the case of pillar or bottom plates or their equivalent the duty shall be the rate provided in clause (2) of this subparagraph instead of 3 cents, and except that in the case of a balance assembly the duty shall be 50 cents for the assembly instead of 3 cents for each part or piece thereof. No assembly or subassembly shall be subject to a greater amount of duty than would be borne by the complete movement, mechanism, device, or instrument for which suitable, nor to a less rate of duty than 45 per centum ad valorem. For the purpose of this clause a balance assembly shall be an assembly consisting of a balance wheel, balance staff, and hairspring, with or without the other parts commercially known as parts of a balance assembly. For the purpose of this clause bimetallic balance wheels (not part of a balance assembly), and mainsprings with riveted ends, shall each be considered as one part or piece;

(4) all other parts (except jewels), 65 per centum ad valorem.

(d) Jewels, suitable for use in any movement, mechanism, device, or instrument, dutiable under this paragraph or paragraph 368, or in any meter or compass, 10 per centum ad valorem.

PAR. 397. Articles or wares not specially provided for, if composed wholly or in chief value of platinum, gold, or silver, and articles or wares plated with platinum, gold, or silver, * * * whether partly or wholly manufactured, 65 per centum ad valorem * * *.

On the trial in the court below, appellant called two witnesses, Edward Renz and Nathan Moskowitz.

The witness Renz testified that he was treasurer of the Hammel Riglander Pennant Corp., appellant; that appellant was engaged in the business of importing tools and materials for watchmakers and jewelers; and that the merchandise here involved consisted of 3,627 watch crowns. He identified Exhibit No. 1, which was introduced in

evidence as representative, except as to size and shape, of the imported articles. He also identified a watch crown, introduced in evidence as Collective Exhibit A, which was similar to those imported, except that it had been "sawed in half" by the witness in order to show that the imported articles were composed of two pieces of material, a core and a shell, the shell being "clamped over the core." The witness further testified that the terms "assembly" and "sub-assembly" were not used in the trade; that watch crowns, of which Exhibit 1 is representative, are bought and sold in the trade as one piece or unit; that the watch crowns could not be disassembled without "ruining" them; that his company designated watch crowns and stems "as case materials"; and that the shell portions of the involved articles were gold-plated.

The witness Moskowitz testified that he was connected with the Hammel Riglander Pennant Corp., appellant, as a "material man"; that as such it was his duty to "fit and take apart and put together * * * the various parts of watches that are dealt in by that corporation." With regard to the attachment of watch crowns to watches, he testified as follows:

Q. Have you put watch crowns into watches?—A. Yes.
Q. Have you attached or fastened a crown to a watch movement?

  *  *  *  *  *  *  *

The WITNESS. I have.

  *  *  *  *  *  *  *

Q. To a watch movement, you have?—A. Well, to the stem. The stem is part of the movement, the crown is part of the case. They work together that way.

Judge FISCHER. Have you fastened the crown to the case or to the stem?
The WITNESS. It is fastened to the stem.

  *  *  *  *  *  *  *

Q. The crown is fastened to the stem?—A. That is right.
Q. The stem runs, as I understand it, through the upper portion of the case and extends down into the movement?—A. That is right.
Q. And the stem is attached to the movement; is that correct?—A. That is right.

Judge FISCHER. If you fastened the crown to the case, it couldn't move, could it?
The WITNESS. The crown could not be fastened to the case. It has to be attached to the stem.

  *  *  *  *  *  · *  *

Mr. ISENSCHMID. Do you handle watchcases at all?
The WITNESS. We don't import them, no. During my course of work I come across them. It is necessary to have to buy them.

The Government called but one witness, Jacob Freistadter, who testified that he was superintendent of the Waltham Watch Co., Waltham, Mass.; that he had been with that company for 28 years, "the last 9 years as general superintendent; before that as master watchmaker for 8 years; and before that, working at the bench on

various jobs, such as assembly movements, matching escapements, finishing watches, timing, casing—in fact, all operations that were done in finishing departments." The witness was then shown Exhibit 1, and asked to state what it was, and what functions it performed. In reply, he stated: "This is commonly known as a watch crown, and is used as—its primary use is the winding of the watch, the winding of the movement." He further testified as follows:

Q. Is it attached to the movement?—A. It is attached to a part of the movement; yes, sir.

Q. To what part of the movement?—A. Attached to the winding arm. It is called the winding arm. Others call it the stem.

Q. Is it an indispensable part of the movement?—A. I consider it an integral part of the movement.

Q. The movement could not be used in a practical way, could it, without that crown?—A. Ordinarily you could not wind it unless you had a crown or some such similar device for the purpose.

Q. You would either have to have a crown or pincers or key or something to wind it up?—A. Or a special key; yes.

Q. Does the crown touch the case, or is it fastened to the case?—A. It may touch the case. It is not fastened to it.

On this record the court below held that the involved watch crowns were integral parts of watch movements; that they were not parts of watchcases; and that, as they consisted of two pieces of metal joined or fastened together, they were dutiable under clause (3) of subparagraph (c) of paragraph 367, *supra*, as assessed by the collector, and, accordingly, overruled the protest.

In its decision, the court, among other things, said:

According to the testimony, each of the so-called "crowns" in suit are composed of two pieces of gold-plated metal, fastened together. The completed crown is fastened to the top of a stem of a watch, which in turn extends down into the case of the movement. Its function is to wind and set the watch, taking the place of the old-fashioned watch key. The crown is fastened to the stem and not to the case of the watch. It is an integral part of a watch movement.

It is contended by counsel for appellant that each of the involved watch crowns is a single watch part or unit, and not an assembly nor a subassembly, within the meaning of those terms as used in clause (3) of subparagraph (c) of paragraph 367, *supra*; and that, if the involved watch crowns are parts of watch movements, they are dutiable at 65 per centum ad valorem under clause (4) of that subparagraph. It is contended, however, by counsel for appellant, that the involved watch crowns are not parts of watch movements, but are parts of watchcases; that parts of watchcases are not provided for in paragraph 367; and that, therefore, they are dutiable as manufactures of metal, plated with gold, at 65 per centum ad valorem under paragraph 397, *supra*. It is further contended by counsel for appel-

lant that from the legislative history of paragraph 367, and from the common meaning of the terms "assembly" and "subassembly", it was the purpose of the Congress to include in clause (3) of subparagraph (c) of paragraph 367 only assemblies and subassemblies made up of two or more parts of watch movements, such parts as might be "united and disunited", or "assembled and dissasembled"; and that, assuming that a watch crown is a part of a watch movement, it is a single part of such movement, incapable of being disassembled without being ruined, and is, therefore, neither an "assembly", nor a "subassembly", within the meaning of either of those terms as used and defined in the provisions in question. In support of their construction of the involved provisions, counsel for appellant have called attention to the hearings before the Committee on Ways and Means of the House of Representatives, Tariff Readjustment, 1929, volume 3, page 2365, relative to H.R. 2667 (which later became the Tariff Act of 1930), where, in the brief of the American Watch Manufacturers, it is stated:

> * * * That as a large protion [portion] of the evasions of the present act have taken the form of imports of parts or pieces of material attached together until they become what may be called subassemblies, and as such subassemblies or incomplete movements are imported in that form solely for the purpose of evading the duty of the complcted article, we strongly urge that in order to prevent this practice * * * the importation of such subassemblies be prohibited.

It is contended by counsel for the Government that the involved watch crowns are parts of watch movements, and that they are assemblies or subassemblies within the meaning of those terms as used in clause (3), *supra*, and that the judgment below should be affirmed.

Appellant's witness Renz testified that his company designated both watch crowns and stems "as case materials"; whereas the witness Moskowitz, who also testified for appellant, stated that watch crowns are fastened to watch stems, that *the stems are parts of watch movements*, and that, although the crowns could not be fastened to watchcases, they were, nevertheless, parts of such cases. He did not state why he considered them parts of watchcases.

The witness Freistadter, who testified for the Government, stated that watch crowns are attached to parts of watch movements, and that *he* considered them integral parts of such movements.

The testimony is not very satisfactory. Appellant's witnesses, both employees of appellant, one its treasurer, and the other a "material man", disagreed as to the classification of watch stems. The witness Renz stated that appellant designated them as watchcase materials, whereas the witness Moskowitz stated that they were parts of watch movements. It is true that the witness Renz stated that watch crowns were designated by appellant as watchcase materials, although he gave no reason as to why his company so designated

them, and the witness Moskowitz, without assigning any reason therefor, stated that they were parts of watchcases.

In view of the fact that, according to the testimony of appellant's witness, Moskowitz, and the Government's witness, Freistadter, watch stems are parts of watch movements, and as watch stems and watch crowns are attached together and used to wind and set watches, we are unable to hold, on the evidence of record, that the trial court erred in holding that the involved watch crowns were integral parts of watch movements.

It will be observed that clauses (1), (2), (3), and (4) of subparagraph (c) of paragraph 367 relate to parts of watch movements and other mechanisms, devices, and instruments provided for in subparagraph (a) of that paragraph.

Assemblies and subassemblies provided for in clause (3), *supra*, are defined therein as "consisting of two or more parts or pieces of metal or other material joined or fastened together."

We think it is evident, from the language of clause (3), *supra*, that the Congress did not intend that its provisions should be limited to assemblies or subassemblies consisting of "two or more" completely finished parts of watch movements, which could be united and disunited or assemblied and disassembled, as claimed by counsel for appellant. If the Congress intended to so limit the provisions in question, it would have been sufficient to have said "each assembly or subassembly of parts." The clause, however, defines assemblies and subassemblies as consisting not only of two or more parts, but also of two or more pieces of metal or other material joined or fastened together, and, with certain exceptions, provides a duty of "3 cents for each *such part or piece of material.*" (Italics ours.)

It will be observed, furthermore, that the Congress expressly provided in clause (3) that for "the purpose of this clause bimetallic balance wheels (not part of a balance assembly), and main springs with riveted ends, shall be considered as one part or piece."

The term "bimetallic" is defined in Webster's New International Dictionary, as follows:

(1) Composed of two different metals; formed of two parts, each of a different metal; as, *bimetallic* wire; *bimetallic* thermometer, etc.

Whatever may have been the reason for excepting balance wheels composed of two different metals, or formed of two parts, each of a different metal, and main springs with riveted ends, which are obviously composed of more than one part or piece of material, it is evident that the Congress considered it necessary, in order to prevent their classification under the provisions for assemblies or subassemblies, to expressly except those parts of watch movements from the operation of those provisions.

It is true, as stated by counsel for appellant, that as H.R. 2667 (which later became the Tariff Act of 1930) passed the House of Representatives, clause (3), *supra*, did not contain the term "assembly", but covered subassemblies only, and provided that they should "be subject to the same amount of duty as the complete movement, mechanism, device, or instrument for which intended or suitable", and that the word "assembly" was added to the provisions in question in the Senate and the rate of duty changed to 3 cents, with some exceptions not here material, for each part or piece of material in such assemblies or subassemblies.

Clauses (1), (2), and (3), of subparagraph (c) of paragraph 367, as passed by the House of Representatives, were rewritten by the Finance Committee of the Senate, and clause (4) was added to that subparagraph.

In the report of the Senate Finance Committee, relative to the provisions of clauses (1), (2), (3), and (4) of subparagraph (c) of paragraph 367, Report No. 37, at pages 16 and 17, we find the following:

Subparagraph (c) (1): The new language is introduced to permit the importation at the present rates of duty of a sufficient quantity of individual pieces and of subassemblies, consisting of two or more parts or pieces of material joined together, to supply normal requirements for replacement parts.

Subparagraph (c) (2): The subparagraph is expanded to include a mandatory assessment for those pillar or bottom plates for which a definite determination of the jeweling and adjustment of the complete mechanism cannot be made.

Subparagraph (c) (3): The subparagraph is completely rephrased, substituting a specific rate *for each piece* (with certain exceptions), *in any subassembly* or *incomplete mechanism instead of assessing each subassembly* or *incomplete mechainsm* [mechanism], (as was done in the House bill), at the full rate of the mechanism for which suitable. Pillar or bottom plates if appearing in a subassembly are dutiable at the rates provided for such plates, while the other parts in the subassembly are dutiable under this clause. As in the House bill, bimetallic balance wheels are dutiable as one piece of material, as well as main springs with riveted ends. (Italics ours.)

Subparagraph (c) (4): This clause is intended to include all *individual parts* or pieces of metal or other material if imported unattached to other pieces or parts and not imported under the provisions of subparagraph (c) (1) except jewels, set or unset. The purpose of the clause is to encourage the importation of individual parts, for assembly on a factory basis in the United States, *instead of the importation of incomplete mechanisms and subassemblies which can usually be assembled without factory equipment* and with a minimum of labor. (Italics ours.)

With reference to subpragraph (d), *supra*, the committee reported as follows:

Subparagraph (d): The paragraph has been restricted to unset jewels to avoid the possibility of importing set jewels, which are a subassembly, at the rate of duty hereunder instead of at the rates provided in subparagraph (c) (3).

Although, as finally enacted by the Congress, some changes were made in subparagraph (c), *supra*, as written by the Finance Com-

mittee of the Senate, those changes are not material to the issues here involved.

With regard to the quoted excerpt from the brief of the American Watch Manufacturers, *supra*, which counsel for appellant argue indicates that a "subassembly" was intended to consist of two or more finished parts attached together, rather than a single "part" composed of two or more parts or pieces of metal or other material fastened or joined together, it may be said that whatever construction might be given it, the Congress did not employ the precise language, nor did it accept the suggestion, contained therein.

In view of the fact that the involved watch crowns, although parts of watch movements, are composed of two parts or pieces of metal joined or fastened together, they are within the literal meaning of the language contained in clause (3), *supra*. Moreover, considering the language and the legislative history of the provisions in question, we are of opinion that the Congress meant exactly what it said, and that, whether they are called assemblies or subassemblies, two or more *finished parts* of metal or other material joined or fastened together, and, also, *two or more pieces* of metal or other material joined or fastened together, were intended, unless expressly excepted therefrom, to be dutiable under those provisions. We must hold, therefore, that the court below reached the right conclusion. Its judgment is, accordingly, *affirmed*.